**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**NICHELE HARRIS**,

          Plaintiff,

        v.

**MARTIN O'MALLEY**[1],
*Commissioner of Social Security*,

          Defendant.

Civil Action No. 3:23-cv-00775 (ZNQ)

**OPINION**

**QURAISHI, District Judge**

    **THIS MATTER** comes before the Court upon an appeal of Nichelle Harris ("Plaintiff") seeking review of a final decision by the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") because Plaintiff's disabling conditions medically improved pursuant to 20 C.F.R. § 404.1594(a) and (b)(1) through (b)(6) of the Social Security Act ("SSA" or the "Act"). Plaintiff filed a brief in support of the appeal. ("Pl.'s Br.", ECF No. 6.) Defendant opposed the appeal ("Opp'n Br.", ECF No. 9.) Plaintiff filed a reply brief in further support of the appeal. ("Reply Br.," ECF No. 10.) The Court has carefully considered the parties' submissions and decides the appeal without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil

---

[1] After this appeal was filed, Martin O'Malley was nominated and confirmed by the Senate and sworn into office as the Commissioner of the Social Security Administration on December 20, 2023. Under Rule 25 his substitution for the prior Acting Commissioner is automatic. Fed. R. Civ. P. 25(d).

1

Rule 78.1. For the following reasons set forth below, the decision of the Administrative Law Judge ("ALJ") will be AFFIRMED.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

On August 16, 2010, Administrative Law Judge Louis McAfoos III ("ALJ McAfoos") determined that Plaintiff had been disabled since May 22, 2008, in a comparison point decision ("CPD") and awarded DIB. (Administrative Record ("AR"), ECF No. 3; (AR 97-102.) At that point in time, ALJ McAfoos determined that Plaintiff had the residual functional capacity ("RFC") for sedentary work which involves sitting most of the time[2] but may involve walking or standing for brief periods of time particularly since Plaintiff had pain that prevented her from performing basic work-related activities on a sustained basis. (AR 99.)

After conducting a continuing disability review ("CDR"),[3] the state agency determined that Plaintiff's disability ended and that she was no longer disabled as of October 31, 2017, due to Plaintiff's improved medical condition.[4] (AR 103-15.) The state agency's determination of medical improvement was based on a series of examinations and consultations. In January of 2017, Plaintiff visited the emergency room with a complaint of abdominal and lower back pain. (AR 505.) The examination discovered that Plaintiff had tenderness over her lumbar spine, but she had normal extremities, full extremity, and spinal range of motion, as well as intact sensation

---

[2] Plaintiff could sit for six hours; stand and walk for slightly less than two hours; occasionally climb, stoop, kneel, balance, crouch, and crawl; and Plaintiff had pain that prevented her from performing basic work-related activities on a sustained basis. (AR 99.)

[3] By definition, a CDR is the process by which the agency periodically reviews a beneficiary's continued eligibility for disability benefits and considers whether the beneficiary has experienced medical improvement. *See* 20 C.F.R. § 404.1594(a).

[4] In October 2017, as part of the CDR, state agency reviewing orthopedist Arthur Pirone, M.D., reviewed Plaintiff's medical records and noted a new impairment of migraine headaches without evidence of intractability or status "migrainosus." (AR 111.) Dr. Pirone noted that Plaintiff was not taking any medication or receiving any treatment for migraines, and the consultative examiner's physical examination was extremely normal since Plaintiff had no difficulty standing, walking, sitting, or using her upper extremities, and recent x-rays of her lumbar spine reflected age-appropriate degenerative changes. (*Id.*) Based on Dr. Pirone's review of Plaintiff's medical record, he noted significant medical improvement since the CPD, and the current evidence demonstrated her impairments were non-severe. (*Id.*)

and strength. (AR 507.) During Plaintiff's CDR, the state agency arranged for a consultative physical examination in June of 2017. (AR 517-20.) Dr. Thomas Woloszyn, M.D., documented Plaintiff's reports of severe migraines that occurred three to four times per week after a head injury in 1999 and Plaintiff's reports of lower back problems since 2000. (AR 517.) Plaintiff had therapy, acupuncture chiropractic treatment, and two epidural injections in 2009, and was not seen again for treatment for her back pain since Plaintiff's emergency room visit in 2017. (*Id.*) Dr. Woloszyn's examination revealed Plaintiff could sit, stand, and get on and off the examination table without difficulty.[5] Dr. Woloszyn further assessed lumbago, sprain and strain disorder, and possible discogenic disease, finding that Plaintiff was not currently receiving any treatment and migraine headaches. (AR 518.) On September 9, 2019, a lumbar spine x-ray revealed moderate to severe degenerative disc disease with disc space narrowing, vacuum phenomenon, and anterior osteophytes, but toward the end of the month, an examination revealed that Plaintiff walked with a normal gait; could heel and toe walk without difficulty; and had intact strength, sensation, and coordination. (AR 526-27, 590.)

During another examination on October 7, 2019, Plaintiff had a normal spine with full range of motion and no tenderness; full range of motion her extremities; and full strength and sensation. (AR 550-51.) In February of 2020, Plaintiff met with her primary care provider to follow up on her back pain and obtain medication refills. (AR 674.) During that examination, it was determined that Plaintiff had limited lumbar spine range of motion, displayed motor strength and tone, a normal gait and station, and intact sensation. (AR 677.) Another examination in

---

[5] Dr. Woloszyn's examination of Plaintiff also discovered that she ambulated normally without a cane; had full upper and lower extremity active and passive range of motion; displayed normal sensation; had full muscle and grip strength; had normal appearing cervical, thoracic, and lumbar spines; exhibited no spinal tenderness or spasm; had a negative straight leg raising test both seated and supine; could squat and heel and toe walk without difficulty; and could fully extend her hands, make a fist, oppose her fingers, separate papers, and button buttons. (AR 518-20.)

3

February of 2020, documented that Plaintiff denied headaches and back pain. (AR 690.) In March of 2020, Plaintiff was seen by Dr. Stephen Cairone, D.O., who determined that Plaintiff had a positive straight leg raising test bilaterally, but she had full cervical and lumbar spine range of motion and 5/5 strength in all extremities. (AR 622.) In April of 2020, Plaintiff reported that she experienced two migraine headaches every two weeks and indicated that her insurance company denied Botox injections. (AR 590.) Advanced Nurse Practitioner, Tricia Cattani, AP-N, at Dr. Vijay Pampana, M.D.'s office, assessed Plaintiff's chronic migraine headaches that were stable on Topamax. (AR 588.) Nurse Practitioner Cattani prescribed an additional medication for use at the onset of a headache. (*Id.*) Plaintiff reported no headaches during May of 2020 but increased headaches in June of 2020 during a follow-up appointment. (AR 585.) Plaintiff did not wish to increase her Topamax dose and Nurse Practitioner Cattani added Migrelief to Plaintiff's regimen. (AR 586.) During a telehealth appointment with neurology for reported headaches by Plaintiff in December of 2020, Plaintiff reported her pain was a 0 on the 10-point pain scale. (AR 583.) The treating physician also observed Plaintiff's extremities moved without difficulty. (*Id.*) In 2021, Plaintiff had several examinations where she denied experiencing headaches or associated symptoms. (AR 597, 599, 601, 603, 605, 607, 610, 613, 617, and 619.)

Following the medical improvement determination by the state agency, the cessation of DIB decision was affirmed on reconsideration. (AR116-17.) Plaintiff appealed the reconsideration decision to a Disability Hearing Officer who held a hearing on February 24, 2020, and issued an independent decision affirming the state agency's determination that Plaintiff's disability ended as of October 31, 2017. (AR 146-57, 160-69.)

On October 21, 2021, at the request of Plaintiff, the Administrative Law Judge Kenneth Ayers ("ALJ Ayers") held a hearing at which Plaintiff and a vocational expert testified. (AR 50-

4

73.) After applying the eight-step process used to evaluate CDR cases (AR 32-42), ALJ Ayers determined on January 7, 2022, that Plaintiff's medical condition had improved as of October 31, 2017. (AR 35.) Although Plaintiff had newly developed impairments since the initial grant of DIB which focused on her back, ALJ Ayers determined that Plaintiff had the RFC to perform light work with limitations related to postural movements, environmental conditions, and mental activities. (AR 37.) Considering the vocational expert's testimony, ALJ Ayers concluded that someone with Plaintiff's vocational profile and improved RFC could perform representative light occupations available in significant numbers in the national economy signifying that Plaintiff was not disabled. (AR 41-42.)

Specifically, at step one, ALJ Ayers found that Plaintiff had not engaged in substantial gainful activity from August 16, 2020—the date of the CPD through the date of ALJ Ayers' decision. (AR 32.) At step two, the ALJ found that medical evidence establishes that, since October 31, 2017, Plaintiff has had the following medically determinable impairments: degenerative disc disease, migraines, obesity, post-traumatic stress disorder ("PTSD"), and substance abuse disorder. (*Id.*) ALJ Ayers noted that there was also no evidence that the impairments resulting in severe exacerbations or required any significant treatment. (*Id.*) As a result of evaluating step two, ALJ Ayers determined that, since October 31, 2017, Plaintiff has not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526). (*Id.*)

At step three, ALJ Ayers concluded that Plaintiff had experienced "medical improvement" within the meaning of 20 C.F.R. § 4041594(b)(1). (AR 35.) ALJ Ayers determined that the

5

medical evidence supported a finding that by October 31, 2017, there had been a decrease in medical severity of the impairments present at the time of the CPD. (*Id.*)

At step four, ALJ Ayers found that Plaintiff's medical improvement is related to her ability to work because it resulted in an increase in the claimant's RFC (20 CFR 404.1594(c)(3)(ii)). (AR 37.) Accordingly, ALJ Ayers determined that there had been an increase in Plaintiff's RFC, as Plaintiff was determined to be disabled based on the presence of a "listed" impairment at the time of the CPD. Therefore, ALJ Ayers proceeded to step six.

At step six, since October 31, 2017, ALJ Ayers found that Plaintiff has been unable to perform past relevant work. (AR 41.)

At step seven, since October 31, 2017, ALJ Ayers assessed whether the transferability of job skills is not material to the determination of disability. Using the Medical-Vocational Rules as a framework to determine whether or not the claimant has transferrable jobs skills, ALJ Ayers found that Plaintiff was "not disabled." (*Id.*)

Lastly, ALJ Ayers determined that since October 31, 2017, considering the claimant's age, education, work experience, and RFC based on the impairments present since October 31, 2017, Plaintiff has been able to perform a significant number of jobs in the national economy. (*Id.*) Therefore, ALJ concluded that Plaintiff's disability ended on October 31, 2017, and the claimant has not become disabled again since that date. (AR 42.)

On January 7, 2022, Plaintiff requested that the Appeals Council review ALJ Ayers' decision. (AR 1-5.) Thereafter, the Appeals Council denied Plaintiff's request for review of ALJ Ayers' decision because the reasons that Plaintiff provided did not form a basis for changing the final determination—that Plaintiff is no longer disabled due to medical improvement. (*Id*.) Now,

6

Plaintiff brings the present action before this Court requesting judicial review pursuant to 42 U.S.C. § 405 (g).

## II. LEGAL STANDARD

This Court reviews the Commissioner's final decision only to assess whether the decision rests on the application of proper legal standards and is supported by "substantial evidence." 42 U.S.C § 405 (g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). In applying the deferential substantial evidence standard of review, the court does not "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992); *Rutherford*, 399 F.3d at 552. Even if the court would have decided the case differently, the court defers to the Commissioner and affirms his findings and decision so long as substantial evidence supports it. *Hartrant v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

The standard for substantial evidentiary sufficiency is not high. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). However, it is only "more than a mere scintilla." *Id.* (internal quotation omitted). A mere scintilla means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation omitted). Therefore, the substantial evidence standard is even less demanding than the clearly erroneous standard applicable to appellate review of district court fact-finding. *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999) (citing *Biestek*, 139 S. Ct. at 1154). In *Biestek*, the United States Supreme Court reminded the parties that an ALJ's fact-finding is not readily subjected to categorical rules separate and apart from the deferential substantial evidence test. *Id.* at 1156-57. "[T]he inquiry, as is usually true in determining the substantiality of evidence is case-by-case." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 410 (1971)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and

7

explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)).

## III. DISCUSSION

Under the statute and regulations, a claimant's entitlement to disability benefits must be reviewed periodically to determine whether "there has been any medical improvement" in the disabling impairments. 42 U.S.C. § 423(f)(1)(A); 20 C.F.R. § 404.1594(a). "Medical improvement" is defined as "any decrease in the medical severity" of the claimant's impairments, and is based on "improvements in the symptoms, signs, and/or laboratory findings associated with" the claimant's impairments. 20 C.F.R. § 404.1594(b)(1). A finding of medical improvement will result in the termination of benefits if "it is also shown that [the claimant is] currently able to engage in substantial gainful activity." *Id.* at § 404.1594(b)(3). That determination may be based on all of claimant's current impairments, not just those present at the time of the most recent favorable determination. *Id.* at § 404.1594(b)(5).

To determine whether medical improvement has occurred, the administrative law judge must "compare the current medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled to the medical severity of that impairment(s) at that time." *Id.* at § 404.1594(b)(7); see also *id.* at § 404.1594 (c)(1) (explaining that medical improvement is determined "by a comparison of prior and current medical evidence which must show that there has been improvement in the symptoms, signs or laboratory findings associated with that impairment(s)"). Additionally, the Commissioner's regulations provide an eight-step process for

determining whether a claimant remains disabled for purposes of receiving disability insurance benefits. 20 C.F.R. § 404.1594(f)(1)–(8).[6]

Plaintiff raises two arguments on this appeal. (Pl.'s Br. at 14-21.) First, she argues that ALJ Ayers failed to correctly apply the legal standard for discontinuing disability benefits. (*Id.* at 14-20). Second, Plaintiff submits that ALJ Ayers failed to properly consider her migraine headache condition in this context. (*Id.* at 21–24.) For the reasons set forth below, the Court finds that neither of these two interrelated arguments provides a basis to reverse ALJ Ayer's decision.

    A.    **The Appealed Decision Correctly Applied the Standard for Discontinuing Her Benefits**

As a preliminary matter, the Court notes that Plaintiff repeatedly faults the appealed decision for failing to discuss evidence prior to the CPD. (Moving Br. at 14) ("the ALJ's decision is devoid of any discussion of evidence prior to 2017"); (*Id.* at 17) ("the ALJ does not compare any of this [recent] evidence with the evidence at the time of the comparison point decision"); (*Id.* at 20) ("The ALJ's cursory analysis does not contain any discussion of any evidence prior to the comparison point decision, as is required by the regulatory standards.") (emphasis omitted). This is simply incorrect. The appealed decision explicitly acknowledges clinical data prior to 2017

---

[6] The eight-step process is as follows: (1) the claimant is no longer disabled if she is engaging in substantial gainful employment, (2) the claimant is still disabled if she suffers from a severe impairment or combination of impairments which meets or equals one of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"), (3) if the claimant does not meet any of the Listings, the ALJ must determine whether there has been medical improvement shown by a decrease in medical severity of the claimant's impairments, (4) if there is medical improvement, the ALJ then considers whether it is related to the claimant's ability to do work by determining whether there has been an increase in the claimant's residual functional capacity ("RFC") based on the impairments that were present during the claimant's most recent favorable medical decision finding he was disabled, *i.e.* the CPD, (5) if there is no medical improvement, the ALJ considers whether any exceptions to medical improvement apply, (6) if claimant's medical improvement is related to her ability to do work, the ALJ then determines whether the claimant's RFC show significant limitations on his ability to do work—if all of the claimant's impairments do not significantly limit her ability to do work, he is found to no longer be disabled, (7) if the claimant's RFC significantly limits her ability to do work, the ALJ will then consider whether his able to do any work he has done in the past—if she can perform past relevant work, then she is found to be no longer disabled, and (8) if the claimant can no longer perform any past relevant work, the ALJ inquires whether someone of the claimant's RFC, age, education, and past work experience could find other work existing in the national economy—if the ALJ then determines there is available work that the claimant could perform, then the claimant is found to no longer be disabled.

before moving on to address the more recent clinical information. (AR 36.) It also explicitly notes an apparent transition in Plaintiff's condition. (AR 40.) ("The undersigned notes there were several opinions from the claimant's initial applications relating to her functioning in 2010. While those opinions were consistent with the evidence at the time, they are from over seven years before the relevant period in this case. Furthermore, they are not consistent with more recent exams noting many unremarkable physical findings.") (citations omitted). The Court therefore sets aside Plaintiff's objections on this point.

Based on the Court's review, it is apparent that ALJ Ayers based his decision on evidence that showed an improvement in Plaintiff's impairments since she was awarded benefits. (AR 35.) Notably, the decision cites evidence reflecting that in 2017, Plaintiff participated in a consultive physical examination where she showed no difficulty sitting, standing, and getting on and off the examination table; Plaintiff exhibited normal ambulation; no difficulty squatting, heel walking, and toe walking; Plaintiff demonstrated reduced lumbar spine range of motion but otherwise she had normal range of motion in her upper and lower extremities; normal lordosis and kyphosis; intact muscle strength, grip strength and sensation; negative straight leg raising tests; normal reflexes other than an absent patellar reflex; and no manipulative limitations. (AR 36.)[7] ALJ Ayers' decision also observes that, in middle to the end of 2019, Plaintiff completed various examinations that showed Plaintiff had no tenderness over her lumbar spine; full range of motion in her spine and extremities; intact strength and sensation; normal ambulation; although she appeared at one appointment with a cane; Plaintiff had normal range of motion in her upper and lower extremities; intact coordination; and that she could not reach up high but nevertheless used

---

[7] The Court notes that there is substantive overlap between the section of the appealed decision that considers Plaintiff's medical improvement at page 35 and the adjacent section that considers her resulting improved RFC from pages 35 through 37. Given this overlap, the Court finds that it is appropriate to consider the substance of the two sections together.

her arm to demonstrate reaching up high. (AR 36) (citing AR 527, 532, 538, 551, and 590.) ALJ Ayers' decision further noted that in 2020 Plaintiff had reduced spinal range of motion and positive straight leg raising tests at times, but she walked with a normal gait; denied having joint or back pain on several occasions; had full extremity range of motion; and again, Plaintiff displayed intact strength, sensation, and reflexes. (AR36-37) (citing 568, 583, 586, 622, 677, and 690.) Especially, ALJ Ayers' decision documented that several examinations performed in 2021 reflected that Plaintiff denied joint or back pain, weakness, or swelling. (AR 37) (citing AR 598-99, 603-04, 607-08, 677, and 690.)

As the above examinations by various treating physicians and medical professionals upon which ALJ Ayers' decision relied, Plaintiff's medical condition improved by her ability to have normal range of her upper and lower extremities and gait that requires use of her spine illustrating significant improvement of Plaintiff's back impairment and 5/5 strength in all extremities. The record reflects that, in light of the apparent improvement in Plaintiff's condition since her initial disability determination in 2010 by ALJ McAfoos, ALJ Ayers properly proceeded to consider the Plaintiff's age, education, work experience, and RFC based on the impairments present since October 31, 2017, in combination with testimony from a vocational expert. Based on these considerations, ALJ Ayers found that Plaintiff would be able to perform a significant number of jobs in the national economy. Therefore, ALJ Ayers concluded, consistent with 20 CFR 404.1594(f)(8), that Plaintiff's disability ended on October 31, 2017. The Court therefore finds that substantial evidence supports ALJ Ayers' decision.

    **B.    The Appealed Decision Also Properly Considered Plaintiff's Migraine Headaches.**

Plaintiff argues that the appealed decision fails to properly analyze Plaintiff's migraine headaches. This is inconsistent with both the record and the applicable law. As a matter of record,

11

the appealed decision discusses Plaintiff's migraines at length.  First, it notes as part of the medical improvement that:

> [i]n terms of the claimant's headaches, the claimant testified she experienced frequent and debilitating headaches.  However, there were many exams where the claimant reported having only one to two migraines a month, as well as some months with no headaches. There were many exams where the claimant denied having a headache or associated symptoms. The claimant also had normal brain imaging and regularly had normal neurological findings during exams.

(AR 35) (citations omitted).  At the end of the RFC analysis, the decision performs the following detailed review of the evidence since the comparison point decision:

> The claimant reported a history of migraine headaches. She reported experiencing three to four migraines a week, resulting in nausea, vomiting and dizziness.  To address the impairment, the claimant was prescribed medication and received Botox injections.  In 2019, the claimant reported having up to 15 migraines a month.  In 2020, the claimant reported improved symptoms, as she was having some months with no headaches and other months with only one to two headache days a week.  During an exam in April of 2020, the claimant reported having one migraine a week.  On exam, the claimant had normal neurological findings.  In June of 2020, the claimant reported having five to six headaches a month. On exam, the claimant was in no acute distress and had normal neurological findings. In September of 2020, the claimant reported having a headache for over a week. However, on exam, the claimant appeared comfortable and had normal neurological findings.  A CT scan of her brain showed normal findings. In August of 2020, the claimant reported she continued to experience several migraines a week. On exam, the claimant was in no acute distress and had normal neurological findings. There were several exams in 2021 where the claimant denied having a headache or associated symptoms.

(AR 37) (citations omitted). Finally, in the context of reporting skepticism with respect to Plaintiff's reports regarding her conditions, including her headaches, the appealed decision found that:

> [t]he medical evidence was not fully consistent with the claimant's reported symptoms and limitations. . . .  In terms of the claimant's headaches, the claimant testified she experienced frequent and

12

> debilitating headaches. However, there were many exams where the claimant reported having only one to two migraines a month, as well as some months with no headaches. There were many exams where the claimant denied having a headache or associated symptoms. The claimant also had normal brain imaging and regularly had normal neurological findings during exams.

(AR 39.)

As a legal matter, "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC. Surveying the medical evidence to craft an RFC is part of the ALJ's duties." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). Courts have held "there is no requirement that an ALJ's RFC have a one-to-one correlation with a specific severe impairment." *Skirble v. Comm'r of Soc. Sec.*, No. 21-cv-238, 2022 WL 3586668, at *1 n.1 (W.D. Pa. Aug. 22, 2022) (rejecting argument that ALJ did not account for migraines in RFC, noting the regulations do not require an ALJ tie limitations to a specific severe impairment; ALJ's RFC was "quite restrictive," and it was clear ALJ did not ignore headaches where he discussed the medical evidence relating to headaches several times throughout the decision); *Weidner v. Kijakazi*, No. 20-cv-1250, 2022 WL 610702, at *12 (D. Del. Feb. 1, 2022) (citing *Skirble* and emphasizing that courts in the Third Circuit have rejected the proposition that an ALJ is required to tie limitations in the RFC to each specific impairment). Based on the record, the Court finds that ALJ Ayers' findings with respect to Plaintiff's migraine headaches are supported by substantial evidence.

On the whole, the Court is satisfied both that ALJ Ayers applied the correct standard and that his decision is supported by substantial evidence.

## IV.     CONCLUSION

For the reasons stated above, the Court will **AFFIRM** the ALJ's decision. An appropriate Order will follow.

Date:  **February 20, 2024**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
